UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| ORLANDO ANDINO, | **DECISION AND ORDER** |
|---|---|
| Plaintiff, | 1:18-CV-00379(JJM) |

v.

ANDREW M. SAUL, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

Defendant.

---

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [9, 10].[2] The parties have consented to my jurisdiction [12]. Having reviewed the parties' submissions [9, 10, 11], the action is remanded to the Commissioner for further proceedings.

**BACKGROUND**

In June 2014 plaintiff, who was 36 years old, applied for DIB and SSI, alleging a disability onset date of December 31, 2010,[3] due to a "[g]unshot wound in left leg near knee 2008", "[p]ole and screws in left leg", hepatitis C, "[l]ichen simplex chronicus", "[i]tchy skin",

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, and is automatically substituted as the named defendant. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[3] Although the applications stated that plaintiff became unable to work because of his disabling conditions on January 21, 2013, the parties agree that his alleged onset date is December 31, 2010. *See* Plaintiff's Memorandum of Law [9-1], p. 2 of 15 (CM/ECF); Commissioner's Brief [10-1], p. 1.

anxiety, and depression. [6-5], pp. 309-19; [6-6], p. 365. After plaintiff's applications were denied ([6-4], pp. 220-35), administrative hearings were conducted before Administrative Law Judge ("ALJ") Paul Georger on December 9, 2016 and July 11, 2017, at which plaintiff, who was represented by counsel, and a vocational expert testified. [6-2], pp. 117-85.

In his September 27, 2017 decision, ALJ Georger determined that plaintiff's severe impairments were "lumbar degenerative disc disease, anxiety, depression, drug dependence, and intellectual disorder". [6-2], p. 13. He also determined that plaintiff had a variety of other non-severe impairments, including cirrhosis of the liver secondary to a hepatitis C infection, but determined that "there is no evidence [that it] impacts the claimant's functioning". He further explained that plaintiff's "hepatitis C viral load is reported to be undetectable and that the condition considered 'dormant'", noting that "[i]n February 2017, the condition remained 'not active' and not requiring treatment, a conclusion reiterated in March 2017". Id., p. 14.

Based on the record before him, ALJ Georger concluded that plaintiff had the residual functional capacity ("RFC") to perform light work, except that he can stand and walk for up to four hours; "can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can never balance, stoop, kneel or crawl; can occasionally crouch; can occasionally work at unprotected heights and around moving mechanical parts, and operate a motor vehicle; is limited to preforming simple, routine and repetitive tasks; can use judgment for simple work-related decisions; can occasionally respond appropriately to supervisors, coworkers and the public; can occasionally deal with changes in the work setting limited to simple work-related decisions; and is not fluent in English". Id., p. 15. In reaching that RFC, ALJ Georger gave "great weight" to the August 18, 2014 opinions of consultative examiners Donna Miller, D.O.

(internal medicine examination) and Kristina Luna, Psy.D (psychiatric examination). Id., pp. 21-23.

Based upon plaintiff's RFC and the testimony of Linnell Hall, a vocational expert, ALJ Georger found that plaintiff was able to perform his past relevant work as a kitchen helper. Id., p. 23. Therefore, he concluded that plaintiff was not disabled from December 31, 2010 through the date of the September 27, 2017 decision. Id., p. 25. The Appeals Council denied plaintiff's request for review (id., pp. 1-5), and thereafter he commenced this action.

## DISCUSSION

### A.     Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

In seeking remand, plaintiff argues that ALJ Georger failed to "properly evaluate the functional effects of [his] Stage IV cirrhosis of the liver" (plaintiff's Memorandum of

Law [9-1], §I), and "reconcile the limitations of Dr. Luna's opinion despite giving her opinion 'great weight'". Id., §II.

B.  **Did ALJ Georger Fail to Properly Evaluate the Functional Effects of Plaintiff's Stage IV Cirrhosis of the Liver?**

Plaintiff argues that ALJ Georger's determination that cirrhosis of the liver was a non-severe impairment was "not supported by Plaintiff's treatment history - particularly his multiple trips to the emergency room for abdominal pain and fatigue", and the "consistent[]" treatment he sought with his primary providers for abdominal pain. Plaintiff's Memorandum of Law [9-1], p. 9 of 15 (CM/ECF). He also argues that ALJ Georger "erred by failing to fully evaluate [his] abdominal pain and stage IV liver disease in his RFC. Id., p. 11 of 15. In response, the Commissioner argues that "the record evidence does not demonstrate that Plaintiff had any functional limitations stemming from his liver disease" and "[a]lthough Plaintiff sought treatment with his primary provider and emergency care for abdominal pain on many occasions . . . his abdominal examination findings were essentially unremarkable aside from mild tenderness". Commissioner's Brief [10-1], p. 25.

It is well settled that "[a] RFC determination must account for limitations imposed by both severe and nonsevere impairments". Parker-Grose v. Astrue, 462 Fed. App'x 16, 18 (2d Cir. 2012) (Summary Order). Hence, "[c]ourts have held that error at step two in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage." Howard v. Commissioner of Social Security, 203 F. Supp. 3d 282, 297 (W.D.N.Y. 2016). Moreover, even where an ALJ fails to mention non-severe impairments in formulating the RFC, such an error may be considered harmless "absent evidence

that these impairments contributed to any functional limitations". Sherman v. Commissioner of Social Security, 2015 WL 5838454, *5 (N.D.N.Y. 2015). *See also* Trombley v. Colvin, 2016 WL 5394723, *17 (N.D.N.Y. 2016) ("[w]hile the ALJ may not have specifically mentioned non-severe impairments by name in his RFC analysis, the record as a whole shows that he did evaluate those impairments and their possible limiting effects and found those limitations to be non-existent or *de minimis*, thereby rendering any legal error on his part harmless"). "For an impairment of any kind to be included in the Step 4 analysis, it must cause or at least contribute to 'physical or mental limitation or restriction of a specific functional capacity.'" Sherman, 2015 WL 5838454, *5 (*quoting* Social Security Ruling ("SSR") 96–8p). "[N]otwithstanding the fact that plaintiff bears the burden with respect to the RFC determination at step four of the sequential disability analysis", substantial evidence must support the ALJ's RFC determination. Schmelzle v. Colvin, 2013 WL 3327975, *14 (N.D.N.Y. 2013).

While it is undisputed that plaintiff was diagnosed with stage IV cirrhosis in July 2016 ([6-7], p. 819) and sought treatment through his primary care physician and emergency room visits for associated abdominal pain (*see, e.g.*, [6-7], pp. 766, 771, 820), the record does not establish any functional limitations from plaintiff's abdominal pain and cirrhosis. Plaintiff points to no treatment records assessing him with any limitations from his cirrhosis. Some of the records also indicate that his complaints of pain were not consistent with his cirrhosis ([6-8], p. 1099 ("no findings to correlate with patient's symptomology")), and suggest that it was believed to be drug-seeking. [6-7], p. 768 ("no narcotics to be given").

Nor did plaintiff testify to any limitations. Although plaintiff testified at the second hearing to having pain in his "whole body", when asked to describe what kind of pain he suffered from, he stated "[i]n my back I have stabbing pains and in my leg it swells and I can't

bend it. My hands go numb. When I had the accident, the aorta exploded and so I have circulation problems". [6-2], p. 129. *See* Colbert v. Commissioner of Social Security, 313 F. Supp. 3d 562, 581 (S.D.N.Y. 2018) ("Colbert did not mention her wrist during her testimony at the hearing, even though she was specifically asked about her limitations . . . . Absent such testimony, the ALJ could properly decline to attribute pushing, pulling, and handling limitations to Colbert associated with her wrist impairment"). Plaintiff also did not complain of abdominal pain at his January 29, 2014 and August 18, 2014 consultative internal medical examinations [6-7], pp. 458-61, 508-11.

Since plaintiff points to nothing in the record demonstrating that his cirrhosis caused limitations in excess of those provided for in the RFC, he fails to establish any harmful error in ALJ Georger's evaluation of that impairment. *See* Sherman, 2015 WL 5838454, *5; Trombley, 2016 WL 5394723, *17; May v. Colvin, 2014 WL 3546297, *5 (W.D.N.Y. 2014) ("[t]he Court finds the ALJ committed no legal error in determining that Plaintiff's abdominal pain was not a severe impairment since there was no medical evidence in the record that his abdominal pain resulted in functional limitations"). *See also* Sanborn v. Berryhill, 2017 WL 923248, *12 (D. Vt. 2017) (the ALJ "analyzed Plaintiff's severe and non-severe impairments and found that due to Plaintiff's pain and other impairments, Plaintiff was restricted to light work and had limited abilities to stand, walk, and perform other manipulative functions during an eight-hour day. He therefore included Plaintiff's pain, regardless of its source, in his RFC determination").

## C. Did ALJ Georger Fail to Reconcile the Limitations of Dr. Luna's Opinion with his RFC?

Plaintiff argues that Dr. Luna's opinion that he "would have mild to moderate limitations in even simple tasks", which was afforded great weight, conflicts with the RFC and that ALJ Georger failed to reconcile that conflict. Plaintiff's Memorandum of Law [9-1], pp. 11-15 of 15 (CM/ECF). In response, the Commissioner argues that Dr. Luna's opinion was not inconsistent with the RFC, since "moderate mental limitations doe not necessarily indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands required for unskilled work". Commissioner's Brief [10-1], pp. 21-24.

Dr. Luna, the consultative examiner, diagnosed plaintiff with "[i]ntellectual disabilities, unknown severity" and "posttraumatic stress disorder". [6-7], p. 505. She concluded that plaintiff's psychiatric and cognitive problems "may significantly interfere with [his] ability to function on a daily basis". Id. Specifically, Dr. Luna opined that plaintiff had:

-- mild limitations "in his ability to follow and understand simple directions and instructions, make appropriate decisions, relate adequately with others, and appropriately deal with stress";

-- moderate limitations "in his ability to perform simple tasks independently; he may need supervision, maintain attention and concentration, maintain a regular schedule, and learn new tasks"; and

-- marked limitations "in his ability to perform complex tasks independently; he will need supervision". Id.

ALJ Georger gave "great weight" to the opinion of Dr. Luna and stated that her opinion was reflected in the RFC, which, in relevant part, found that plaintiff was "limited to preforming simple, routine and repetitive tasks; can use judgment for simple work-related

decisions; can occasionally respond appropriately to supervisors, coworkers and the public; can occasionally deal with changes in the work setting limited to simple work-related decisions". [6-2], pp. 17, 23.

The vocational expert's testimony demonstrates that the need for supervision was an important factor in assessing the plaintiff's capacity to work. While she testified that the need to be supervised twice a day would not be "work-preclusive", she acknowledged that the inability to "perform simple, routine tasks without frequent supervision" would be work-preclusive. [6-2], pp. 148-49. Since Dr. Luna assessed plaintiff with a moderate limitation in the ability to perform simple tasks independently, and specifically found that he may need supervision, it was an error for ALJ Georger to give the entirety of her opinion great weight without some incorporation of that limitation, as well as the other assessed moderate limitations for maintaining attention and concentration and maintaining a regular schedule, or explanation as to how those limitations were incorporated into the RFC.

For example, under similar circumstances, the court in Reider v. Colvin, 2016 WL 5334436, *6 (W.D.N.Y. 2016) concluded that "[a] simple work limitation does not, in the absence of further explanation, appear to account for many of the limitations identified by [the consultative examiner], including assessed difficulties with attention and concentration, scheduling, learning, dealing with stress, and interacting with others . . . . Indeed, [the consultative examiner's] opinion that Reider suffered from mild to moderate difficulties understanding simple directions and instructions and performing simple tasks independently seems at odds with the ALJ's conclusion that Reider could perform simple work. On this record, the ALJ should have explained why these limitations were not incorporated into his RFC." *See also* Alianell v. Colvin, 2016 WL 981864, *14 (W.D.N.Y. 2016) (the consultative examiner's

opinion that the plaintiff "suffers from moderate limitations in understanding simple directions and instructions and performing simple tasks independently does appear inconsistent with the ALJ's conclusion that she is unlimited in her ability to perform simple, unskilled work"); Matthews v. Commissioner of Social Security, 2018 WL 4356495, *3 (W.D.N.Y. 2018) ("while the ALJ expressly stated that Plaintiff's difficulties in performing complex and varied tasks, learning new tasks, relating to others, and dealing with stress were accounted for by the limitation to simple, repetitive, and routine tasks . . . he made no mention whatsoever of Plaintiff's limitations in attention and concentration and in maintaining a schedule. The ALJ's omission of these specific limitations in his discussion undercuts any conclusion that he meant for them to be accounted for therein").

As cited by the Commissioner (Commissioner's Brief [10-1], pp. 22-23), some courts have recognized that moderate non-exertional limitations may be accounted for by limiting a plaintiff to simple work. *See, e.g.*, Landers v. Colvin, 2016 WL 1211283, *4 (W.D.N.Y. 2016) ("[t]he determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's [moderate] limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance"); Ross v. Colvin, 2015 WL 1189559, *12 (W.D.N.Y. 2015) ("[a]lthough the ALJ did not discuss each of the moderate limitations assessed by Altmansberger, he incorporated moderate limitations into his RFC by restricting Ross to jobs that require an individual to understand, remember and carry out simple instructions, make only simple work-related decisions and maintain attention and concentration for only two-hour segments").

However, without further explanation from the ALJ, it is difficult to reconcile plaintiff's ability to perform simple, repetitive and routine tasks with the consultative examiner's

opinion that plaintiff had a moderate limitation for performing simple work independently. Nor does a moderate limitation to perform simple work independently appear to align with an individual who can only *occasionally* respond appropriately to supervisors and coworkers. [6-2], p. 17. Even if plaintiff was capable to simple work without supervision, it is not evident that with moderate limitations in concentration, attention and adhering to a regular schedule, plaintiff would be able to work on a sustained basis. *See* Stellmaszyk v. Berryhill, 2018 WL 4997515, *27 (S.D.N.Y. 2018) (a consultative psychologist's opinion that the plaintiff was capable of performing simple tasks was "ambiguous as to the extent to which Plaintiff could engage in such tasks on a sustained basis, over the course of a workday, despite her [moderate] limitations with respect to maintaining concentration and attention, and adhering to a regular schedule").

Therefore, I am unable to conclude that ALJ Georger's RFC accounted for the moderate limitations assessed by Dr. Luna. *Compare with* Sewar v. Berryhill, 2018 WL 3569934, *2 (W.D.N.Y. 2018) ("[t]he RFC determined . . . that plaintiff can concentrate for up to two hours at a time, which sufficiently describes and accounts for 'moderate' limitations in attention and concentration, with or without the additional limitations to simple instructions, simple tasks, no production quotas, and low-stress work that the ALJ imposed here").

The Commissioner argues that ALJ Georger's mental RFC finding "is amply supported by the essentially unremarkable mental status examination findings of record" and plaintiff's "reported activities of daily living". Commissioner's Brief [10-1], p. 23. However, as plaintiff notes, any explanation that ALJ Georger failed to provide cannot be supplied by the Commissioner *post hoc*. *See* McKinstry v. Astrue, 2012 WL 619112, *4 (D. Vt. 2012), aff'd, 511 Fed. App'x. 110 (2d Cir. 2013) (Summary Order) ("[a] court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ"); Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) ("[a]

reviewing court may not accept appellate counsel's post hoc rationalizations for agency action"). The Second Circuit has made it clear that "the propriety of agency action must be evaluated on the basis of stated reasons". Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983). *See* Stellmaszyk, 2018 WL 4997515, *28 ("[w]hile it may be reasonable for an ALJ to account for a stress-based limitation by including, in the claimant's RFC, restrictions to simple work, with little interaction with others . . . it is not the function of this Court to supply its own rationale where the ALJ's decision is lacking or unclear").

On remand, the ALJ shall clarify his opinion to address Dr. Luna's limitations, and articulate whether they are consistent with his RFC findings. *See* Alianell, 2016 WL 981864, *14. If portions of Dr. Luna's opinion are rejected, the ALJ should "clearly delineate which portions of [Dr. Luna's] opinion will be incorporated into his RFC finding, and which will not be included". Reider, 2016 WL 5334436, *6.

**CONCLUSION**

For these reasons, plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this case is remanded to the Commissioner for further proceedings consistent with this Decision and Order, but is otherwise denied, and the Commissioner's motion [10] is denied.

**SO ORDERED**.

Dated: September 24, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge